UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------- X

TRACY YVONNE COOPER, as Administrator of
the Estate of TERRY L. COOPER, JR.,

                          Plaintiff,

   -against-

STATE OF NEW YORK; CORRECTION
OFFICERS 1-6 (in their individual capacities);
CORRECTION SERGEANTS 1-3 (in their individual
capacities); JAIL NURSES 1-3 (in their individual
capacity),

                          Defendants.

-------------------------------------------------------------------------- X

**COMPLAINT**

**JURY TRIAL DEMANDED**

Case No.   9:19-cv-362 (GLS/DEP)

Plaintiff TRACY YVONNE COOPER, as Administrator of the Estate of TERRY L. COOPER, JR., by and through her attorneys, Bernstein Clarke & Moskovitz PLLC and Beldock Levine & Hoffman LLP, alleges as follows:

**PRELIMINARY STATEMENT**

1.    Plaintiff Tracy Cooper brings this civil rights action against the defendants for the death of Plaintiff's son, Terry Cooper, Jr., while he was incarcerated at Clinton Correctional Facility ("Clinton CF").  Mr. Cooper was only 25 years old and had less than four years left on his sentence at the time of his death.  He had every reason to want to finish his prison sentence without incident and return home to his loving family and young daughter.

2.    The Clinton County Coroner concluded that Mr. Cooper's death was caused by a cardiorespiratory arrest consistent with acute exacerbation of chronic asthma.  Mr. Cooper died after Clinton CF staff assaulted him and then  failed to provide basic life-sustaining care, which would have saved Mr. Cooper's life.

3. The New York State Commission of Correction ("the Commission") conducted a lengthy investigation of Mr. Cooper's death, including the medical care he received for his asthma before he died. The Commission found a long history of Mr. Cooper having been denied proper care for his asthma during his incarceration. The Commission also found that shortly before Mr. Cooper died, he collapsed while he was being moved to the infirmary after the altercation with correction officers, and that Clinton CF staff provided improper and insufficient cardiopulmonary resuscitation ("CPR") and failed to provide other necessary care.

4. Plaintiff seeks justice for the defendants' deliberate violations of her son's civil and constitutional rights. This lawsuit demands accountability for the defendants' senseless actions, and damages for the catastrophic injuries they caused.

## JURISDICTION AND VENUE

5. This action is brought pursuant to 42 U.S.C. § 1983 for violations of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

6. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

7. Venue is proper pursuant to 28 U.S.C. § 1391 in the Northern District, which is the judicial district where the events giving rise to this claim took place.

## JURY DEMAND

8. Plaintiff demands a trial by jury in this action on each of her claims for which a jury trial is legally available.

## THE PARTIES

9. Plaintiff TRACY YVONNE COOPER is a citizen of the United States and of the State of New York. At all times relevant to this complaint, she resided in the State of New York.

10. Plaintiff is the Administrator of the Estate of her son, Terry L. Cooper, Jr., who died on May 19, 2016. Plaintiff was issued Letters of Administration for Mr. Cooper's estate by the Onondaga County Surrogate's Court on July 26, 2016.

11. Defendant STATE OF NEW YORK ("the State") maintains and is responsible for the New York State Department of Correction and Community Supervision ("DOCCS"). Acting through its agency DOCCS, the State is authorized to maintain correctional facilities, and DOCCS acts as its agent and the State is ultimately responsible for DOCCS maintaining and supervising correctional facilities in the State of New York. The State assumes the risks incidental to the maintenance of correctional facilities and the employment of correctional officers and medical officials under its employ.

12. DOCCS is a public entity bound by both Title II of the American with Disabilities Act ("ADA") and the Rehabilitation Act of 1973.

13. DOCCS and the State are responsible for ensuring that people sentenced to a term of imprisonment in a State jail facility receive appropriate care and services required by law.

14. DOCCS and the State oversee and are responsible for maintaining Clinton Correctional Facility ("Clinton CF").

15. The State maintains the New York State Commission of Correction ("the Commission").

16. The Commission is an oversight agency tasked with evaluating all state correctional facilities. It evaluates compliance with all applicable laws and investigates critical incidents that occur at facilities throughout the state.

17. The Commission includes a Medical Review Board ("the Board"). The Board is charged with the power and duty to investigate and review the cause and circumstances surrounding the death of any inmate of a correctional facility.

18. This requires the Board to, among other things, visit and inspect any correctional facility where an inmate has died; examine as necessary the body of the deceased to determine the cause of death; and upon review of the cause of death and circumstances surrounding the death of any inmate, to submit a report to the Commission and, where appropriate, make recommendations to prevent the recurrence of such deaths to the commission and the administrator of the appropriate correctional facility.

19. Defendants CORRECTION OFFICERS 1-6 worked at all relevant times as New York State Correction Officers at Clinton CF. They are sued here in their individual capacities.

20. Defendant CORRECTION SERGEANTS 1-3 worked at all relevant times as New York State Correction Sergeants at Clinton CF. They are sued here in their individual capacities.

21. Defendants JAIL NURSES 1-3 worked at all relevant times as a New York State Correctional Facility Nurse at Clinton CF. They are sued here in their individual capacities.

22. Defendants Correction Officers 1-6, Correction Sergeants 1-3, and Jail Nurses 1-3, are referred to collectively in this complaint as "the individual defendants."

23. At all relevant times, the individual defendants were employed by the State of New York and/or DOCCS and acted under color of law and in the course and scope of their duties and authority as officers, agents, servants, and employees of the State of New York and/or DOCCS.

24. Accordingly, they are entitled to representation in this action by the New York State Attorney General's Office upon their request. The Attorney General is hereby put on notice (a) that plaintiff intends to name said individual defendants as defendants in an amended pleading

once the true names and shield numbers of said defendants become known to plaintiff and (b) that the Attorney General should immediately begin preparing their defense in this action.

25. The true names of the individual defendants are not presently known to the plaintiff but are known to the defendant State of New York and are contained within the Commission's Final Report regarding the death of Mr. Cooper. Despite the best efforts of the Plaintiff to obtain a redacted copy of the Commission's Final Report, which would show the names of the correction officers and nursing staff who were involved in Mr. Cooper's death, the State has refused to provide Plaintiff with an unredacted copy of the Commission's Final Report showing the names of the correctional officers and nurses who are responsible for her son's death.

26. As corrections officials employed by DOCCS, a public entity bound by both Title II of the ADA and the Rehabilitation Act of 1973, the individual defendants are responsible for recognizing when inmates display signs of medical emergencies and for taking appropriate measures to ensure the inmates in such distress receive immediate medical attention.

27. Upon information and belief, the individual defendants are citizens of the United States and citizens and residents of the State of New York.

28. At all relevant times, the individual defendants violated clearly established constitutional rights, of which a reasonable officer in their position would have known.

## STATEMENT OF FACTS

29. Terry L. Cooper, Jr., died on May 19, 2016.

30. He was 25 years old and had a college degree.

31. Mr. Cooper is survived by a young daughter, his mother Tracy Cooper, his father Terry Cooper, Sr., four sisters, and an extended family who loved and cared deeply for Mr. Cooper.

32. Mr. Cooper died in DOCCS custody while incarcerated at Clinton CF.

33. When Mr. Cooper died, approximately four years remained on the prison sentence he was serving.

34. Mr. Cooper was admitted to DOCCS custody on November 15, 2012 at Elmira Correctional Facility.

35. He weighed 115 pounds and was approximately 5'5" tall.

36. Mr. Cooper reported a medical history of asthma and it was documented on the Elmira Reception History Form that Mr. Cooper had an "asthma exacerbation and was hospitalized."

37. Mr. Cooper's asthma is a disability as defined in the statue because it impairs his ability to breath, which is major life activity as defined by the ADA.

38. Mr. Cooper was transferred to Clinton CF on August 27, 2015.

39. Between then and his death on May 19, 2016, Clinton CF medical staff failed to follow the DOCCS Health Services Policy for Asthma Chronic Care for Mr. Cooper.

40. Clinton CF medical staff failed to:

   a. provide Mr. Cooper with a primary care encounter every six months;

   b. update Mr. Cooper's Acute Asthma Rescue Treatment Plan every six months; and

   c. schedule a medical evaluation for Mr. Cooper until May 2016, despite a referral for an asthma evaluation in September 2015.

41. On May 19, 2016, Mr. Cooper was assaulted by Defendants Correction Officer 1 and Correction Officer 2.

42. At approximately 7:30 p.m. that day, in or around 3-company in B-block at Clinton CF, two of the defendant Correction Officers assaulted Mr. Cooper and forced him to the ground.

43. Upon information and belief, the conduct of the defendant Correction Officers caused Mr. Cooper to suffer substantial pain.

44. Mr. Cooper was handcuffed and escorted to the Clinton CF infirmary by two defendant Correction Officers and a defendant Correction Sergeant.

45. Mr. Cooper told the officers that he could not breathe and needed his asthma pump.

46. Upon information and belief, the two defendant Correction Officers and defendant Correction Sergeant did not provide Mr. Cooper with his asthma pump.

47. As some point, Mr. Cooper collapsed.

48. Mr. Cooper was eventually brought into the Clinton CF infirmary by the two defendant Correction Officers and defendant Correction Sergeant who were escorting him, and two other defendant Correction Sergeants.

49. When Mr. Cooper was brought into the infirmary he was not breathing and did not have a pulse.

50. Upon information and belief, the two defendants who escorted Mr. Cooper and brought him to the infirmary were aware Mr. Cooper needed immediate life-saving medical care and unreasonably delayed Mr. Cooper receiving that care.

51. Once inside the infirmary, the defendants who were present deliberately provided inadequate life-saving care to Mr. Cooper.

52. Two defendant Correction Officers and a defendant Jail Nurse performed insufficient CPR on Mr. Cooper by providing an inadequate rate of compressions.

53. Two defendant Correction Officers and a defendant Jail Nurse also failed to utilize a CPR backboard that was immediately available to them.

54. The defendant Jail Nurses delayed approximately fifteen minutes before starting the first intravenous line on Mr. Cooper and delayed for approximately forty-five minutes before starting the second intravenous line.

55. In the course of an investigation into the circumstances of Mr. Cooper's death, the individual defendants submitted false statements and manufactured false evidence.

56. The conduct of the individual defendants caused Mr. Cooper to die.

57. As a result of his death, Mr. Cooper suffered the loss of enjoyment of life.

58. The conduct of the individual defendants caused Mr. Cooper to suffer the violation of his constitutional rights.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 (Excessive Force)

59. Plaintiff realleges and incorporates by reference each allegation set forth in the foregoing paragraphs as if fully set forth herein.

60. Defendant Correction Officers used excessive and unconstitutional force against Mr. Cooper.

61. The use of force against Mr. Cooper was done maliciously and sadistically and constituted cruel and unusual punishment.

62. In committing the acts and omissions complained of herein, Defendant Correction Officers acted under color of state law to deprive Mr. Cooper of his constitutionally protected rights under the Eighth and Fourteenth Amendments to the United States Constitution.

63. As a direct and proximate result of the deprivation of his constitutional rights, Mr. Cooper suffered the injuries and damages set forth above.

64. The unlawful conduct of Defendant Correction Officers was willful, malicious, and oppressive and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 (Deliberate Indifference)

65. Plaintiff realleges and incorporates by reference each allegation set forth in the foregoing paragraphs as if fully set forth herein.

66. In committing the acts and omissions complained of herein, the defendants acted with deliberate indifference to Mr. Cooper's serious medical needs.

67. In committing the acts and omissions complained of herein, the defendants acted under color of state law to deprive Plaintiff of his constitutionally protected rights under the Eighth and Fourteenth Amendments to the United States Constitution.

68. As a direct and proximate result of the deprivation of his constitutional rights, Mr. Cooper suffered the injuries and damages set forth above.

69. The unlawful conduct of the defendants was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## THIRD CAUSE OF ACTION
### Title II of the American with Disabilities Act, 42 U.S.C. §§ 12131-34 and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794

70. Plaintiff realleges and incorporates by reference each allegation set forth in the foregoing paragraphs as if fully set forth herein.

71. The defendant State of New York – acting through its agents – violated Mr. Cooper's rights guaranteed by the Americans with Disabilities Act and the Rehabilitation Act (collectively referred to as "the disability statutes").

72. By failing to follow the prescribed guidelines for intermittent asthma and failing to provide Mr. Cooper his required primary care encounters, among other programs, Mr. Cooper was denied access to and was discriminated against due to his asthma.

73. On information and belief, the prescribed guidelines for intermittent asthma were adhered to for other inmates.

74. By reason of the State of New York's acts and omissions, Mr. Cooper has endured substantial physical, emotional injuries, and death was otherwise damaged and injured.

## FOURTH CAUSE OF ACTION
### 42 U.S.C. § 1985 (Civil Rights Conspiracy)

75. Plaintiff realleges and incorporates by reference each allegation set forth in the foregoing paragraphs as if fully set forth herein.

76. Defendants agreed among themselves and with other individuals to act in concert to deprive Mr. Cooper of his clearly established rights, including but not limited to his right to be free from cruel and unusual punishment and to receive necessary care for a serious medical need.

77. In furtherance of the conspiracy Defendants engaged in and facilitated numerous overt acts, including, without limitation, assaulting Mr. Cooper, denying him necessary medical care, and submitting false statements and manufacturing false evidence to hide their malfeasance.

78. As a direct and proximate result of the deprivation of his constitutional rights, Mr. Cooper suffered the injuries and damages set forth above.

79. Defendants are therefore liable for Mr. Cooper's injuries and death under 42 U.S.C. § 1985.

80. Defendants' actions were willful, malicious, oppressive, and/or reckless, and were of such a nature that punitive damages should be imposed.

## FIFTH CAUSE OF ACTION
### 42 U.S.C. § 1986 (Failure to Prevent Civil Rights Conspiracy)

81. Plaintiff realleges and incorporates by reference each allegation set forth in the foregoing paragraphs as if fully set forth herein.

82. Defendants knew that acts previously mentioned, which violated Mr. Cooper's constitutional rights, were about to be committed, and they had the power to prevent or aid in preventing the commission of the same, but they neglected or refused to do so.

83. As a direct and proximate result of the deprivation of his constitutional rights, Mr. Cooper suffered the injuries and damages set forth above.

84. Defendants are therefore liable for Mr. Cooper's injuries and death under 42 U.S.C. § 1986.

85. Defendants' actions were willful, malicious, oppressive, and/or reckless, and were of such a nature that punitive damages should be imposed.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff demands the following relief against Defendants, jointly and severally:

(a) An order directing the State of New York and the Commission of Correction to disclose to Plaintiff the true identities of Correction Officers 1-6, Correction Sergeants 1-3, and Jail Nurses 1-3;

(b) compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(c) punitive damages to the extent allowable by law;

(d) attorney's fees;

(e) the costs and disbursements of this action;

(f) interest; and

(g) such other and further relief as this Court deems just and proper.

Dated: New York, New York
March 22, 2019

BERNSTEIN CLARKE & MOSKOVITZ PLLC
11 Park Place, Suite 914
New York, New York 10007
212-321-0087
moskovitz@bcmlaw.com

By: _____
Joshua S. Moskovitz

BELDOCK LEVINE & HOFFMAN LLP
99 Park Avenue, 26th Floor/PH Suite
New York, New York 10016
212-490-0400
Jonathan C. Moore
David Rankin
Keith Szczepanski

By:   /s/   _____
Jonathan C. Moore

*Attorneys for Plaintiff*