**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**TRACY YVONNE COOPER,**
as Administrator of the Estate of
Terry L. Cooper, Jr.

                **Plaintiff,**

                  v.

**STATE OF NEW YORK et al.,**

                **Defendants.**
_____

**9:19-cv-362
(GLS/ML)**

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Beldock, Levine & Hoffman | JONATHAN C. MOORE, ESQ. |
| 99 Park Avenue, 26th Floor | DAVID B. RANKIN, ESQ. |
| New York, NY 10016 | |
| | |
| Bernstein Clarke & Moskovitz PLLC | JOSHUA S. MOSKOVITZ, ESQ. |
| 11 Park Place, Suite 914 | |
| New York, NY 10007 | |
| | |
| **FOR THE DEFENDANTS:** | |
| HON. LETITIA JAMES | JORGE A. RODRIGUEZ |
| New York State Attorney General | Assistant Attorney General |
| The Capitol | |
| Albany, NY 12224 | |

**Gary L. Sharpe
Senior District Judge**

## **MEMORANDUM-DECISION AND ORDER**

## **I. Introduction**

Plaintiff Tracy Yvonne Cooper, as administrator of the estate of Terry L. Cooper, Jr. (hereinafter "Cooper"), commenced this action alleging violations pursuant to 42 U.S.C. §§ 1983, 1985, 1986; Title II of the Americans with Disabilities Act (ADA)[1]; and Section 504 of the Rehabilitation Act of 1973,[2] against defendants correction officers Patrick M. Clancy, Steven W. Wood, Kolby M. Duffina, Christopher J. Nichols, Neil J. Napper, Christopher L. Gadway, Sergeant Merit J. Peck, and Sergeant Michael C. Thompkins; Jeffrey H. Taylor, R.N. (collectively, hereinafter "individual defendants"); and the State of New York. (Am. Compl., Dkt. No. 9.)

Pending before the court are the State's motion to dismiss, (Dkt. No. 13), and individual defendants' motion to dismiss, (Dkt. No. 32). For the reasons that follow, both motions are granted in part and denied part.

---

[1] *See* 42 U.S.C. §§ 12101-13.

[2] *See* 29 U.S.C. §§ 701-96*l*.

## II. **Background**

**A.     Facts**[3]

Cooper died while in the custody of the New York State Department of Corrections and Community Supervision (DOCCS) at Clinton Correctional Facility (hereinafter "Clinton C.F."). (Am. Compl. ¶¶ 27, 30.) He was twenty-five years old and suffered from asthma. (*Id.* ¶¶ 28, 34.) Cooper's death was determined to be caused by "cardiorespiratory arrest consistent with acute exacerbation of chronic asthma." (*Id.* ¶ 2.)

Cooper was first incarcerated at Clinton C.F. on August 27, 2015, and plaintiff alleges that between then and the day of Cooper's death, the medical staff at Clinton C.F. "failed to follow the DOCCS Health Services Policy for Asthma Chronic Care" with respect to him. (*Id.* ¶¶ 36-37.) Specifically, plaintiff alleges that the medical staff failed to "provide . . . Cooper with a primary care encounter every six months"; "update . . . Cooper's Acute Asthma Rescue Treatment Plan every six months"; and "schedule a medical evaluation for . . . Cooper until May 2016, despite a referral for an asthma evaluation in September 2015." (*Id.* ¶ 38.) Plaintiff

---

[3] The facts are drawn from plaintiff's amended complaint, (Dkt. No. 9), and presented in the light most favorable to her.

notes that these medical guidelines were adhered to with respect to at least one other inmate. (*Id.* ¶ 40.)

On May 19, 2016, Cooper found himself in an altercation with correction officers at Clinton C.F., during which Clancy and Wood, assisted by Duffina, "forced [Cooper] to the ground" and "caused [him] to suffer substantial pain." (*Id.* ¶¶ 41-43.) Nichols, Napper, and Thompkins subsequently "handcuffed and escorted" Cooper to Clinton C.F.'s infirmary, at which time Cooper complained to them that "he could not breathe and needed his asthma pump." (*Id.* ¶¶ 44-45.) His request for an "asthma pump" was not granted, and he collapsed prior to arriving at the infirmary. (*Id.* ¶¶ 46-47.) Peck then arrived on the scene and assisted the others in bringing Cooper into the infirmary. (*Id.* ¶ 48.)

Cooper was assessed by Taylor in the infirmary, where, upon arrival, Cooper "was not breathing and did not have a pulse." (*Id.* ¶¶ 49, 51.) Plaintiff alleges that although cardiopulmonary resuscitation (CPR) was performed on Cooper by Napper, Gadway, and Taylor, it was insufficient, because the rate of compressions was "inadequate" and they "failed to utilize a CPR backboard that was immediately available to them." (*Id.* ¶¶ 53-54.) Further, despite being told to "start two intravenous lines with

4

saline 'wide open'" by a physician from the Erie County Medical Center Telemed service, Taylor did not "start[] the first intravenous line for approximately fifteen minutes and delayed starting the second intravenous line for approximately forty-five minutes." (*Id.* ¶ 55.) Cooper was pronounced dead shortly thereafter. (*Id.* ¶ 57.)

The New York State Commission of Correction (hereinafter "the Commission") conducted an investigation into Cooper's confinement and death. (*Id.* ¶ 3.) According to plaintiff, "[t]he Commission found a long history of . . . Cooper having been denied proper care for his asthma," and that individual defendants "provided improper and insufficient [CPR] and failed to provide other necessary care." (*Id.*) Plaintiff alleges that individual defendants "submitted false statements and manufactured false evidence" during the course of the Commission's investigation. (*Id.* ¶ 56.)

**B. <u>Procedural History</u>**

Plaintiff filed her initial complaint on March 22, 2019 against the State of New York and several unidentified employees of DOCCS who were assigned to Clinton C.F. (Compl., Dkt. No. 1.) She filed the amended and operative complaint on May 17, 2019, which identifies by name the previously unidentified DOCCS personnel. (Am. Compl.)

5

The amended complaint alleges five causes of action: (1) violation of the Eighth and Fourteenth Amendments for excessive force pursuant to 42 U.S.C. § 1983, against Clancy, Wood, and Duffina; (2) violation of the Eighth and Fourteenth Amendments for deliberate indifference to medical needs pursuant to 42 U.S.C. § 1983, against Nichols, Napper, Thompkins, Peck, and Taylor; (3) violation of Title II of the ADA and Section 504 of the Rehabilitation Act, against the State; (4) a civil rights conspiracy claim pursuant to 42 U.S.C. § 1985, against individual defendants; and (5) a claim of failure to prevent civil rights conspiracy pursuant to 42 U.S.C. § 1986 against individual defendants. (Am. Compl. ¶¶ 60-86.)

The State moved to dismiss all of plaintiff's causes of action as against the State, and her request for punitive damages under the ADA and/or the Rehabilitation Act, to the extent she makes such request. (Dkt. No. 13, Attach. 1.) Individual defendants moved to dismiss plaintiff's claims of deliberate indifference, civil rights conspiracy, and failure to prevent civil rights conspiracy. (Dkt. No. 32, Attach. 1.)

### III. **Standard of Review**

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here. For a full discussion of the governing

6

standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

## IV. Discussion

### A. State's Motion to Dismiss

As plaintiff remarks in her response to the State's motion to dismiss, (Dkt. No. 29 at 4), much of the State's motion is moot. Specifically, the State moves to dismiss plaintiff's claims pursuant to §§ 1983, 1985, and 1986, to the extent she alleges those claims against the State. (Dkt. No. 13, Attach. 1.) However, the amended complaint makes clear, and plaintiff confirms, that these causes of action are only alleged against individual defendants. (Am. Compl. ¶¶ 60-70, 76-86; Dkt. No. 29 at 4.) Accordingly, the State's motion to dismiss with respect to plaintiff's §§ 1983, 1985, and 1986 claims is denied as moot.

The State also moves to dismiss plaintiff's request for punitive damages with respect to her ADA/Rehabilitation Act claim. (Dkt. No. 13, Attach. 1 at 10-11.) Plaintiff confirmed in response that she is not making such a request. (Dkt. No. 29 at 4.) Accordingly, the State's motion as to that point is granted, and, consequently, the only disputed point in the State's motion to dismiss is its argument that plaintiff's ADA/Rehabilitation

7

Act claim should be dismissed. (Dkt. No. 13, Attach. 1 at 6-9.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Title II of the ADA and Section 504 of the Rehabilitation Act are applicable to inmates in state prisons. *See Allah v. Goord*, 405 F. Supp. 2d 265, 274 (S.D.N.Y. 2005). The standards for an inmate's claim under Title II of the ADA and Section 504 of the Rehabilitation Act are "generally the same," so the two statutes are analyzed "identically." *Wright v. N.Y. State Dep't of Corrs.*, 831 F.3d 64, 72 (2d Cir. 2016) (citation omitted). In order to state a claim under these acts, plaintiff must show that "1) [Cooper] is a qualified individual with a disability; 2) DOCCS is an entity

8

subject to the acts; and 3) [Cooper] was denied the opportunity to participate in or benefit from DOCCS's services, programs, or activities or DOCCS otherwise discriminated against him by reason of his disability." *Id.* (citation omitted).

Plaintiff alleges that the State violated Title II of the ADA and Section 504 of the Rehabilitation Act with respect to Cooper, who suffered from asthma, because, "[b]y failing to follow the prescribed guidelines for intermittent asthma and failing to provide [him] his required primary care encounters, among other programs, [he] was denied access to and was discriminated against due to his asthma." (Am. Compl. ¶ 73.) The State, at least for purposes of its motion, concedes that Cooper was a qualified individual with a disability and that DOCCS is subject to the acts, but it argues that plaintiff's ADA and Rehabilitation Act claim should be dismissed because the amended complaint does not demonstrate that Cooper "had been denied access to any program or activity of the kind contemplated by the ADA or [the] Rehabilitation Act," or that the State denied Cooper "access to any such program or activity because he had asthma." (Dkt. No. 13, Attach. 1 at 7.) The court agrees with the State.

Put simply, as argued by the State, the allegations set forth by

9

plaintiff establish that "Cooper's asthma was not adequately treated, not that he was treated inadequately *because of* his asthma."  (Dkt. No. 30 at 6.)  This is fatal to plaintiff's ADA/Rehabilitation Act claim.  *See Schnauder v. Gibens*, 679 F. App'x 8, 11 (2d Cir. 2017) (affirming the dismissal of a plaintiff's ADA/Rehabilitation Act claim because "the [plaintiff's disability] was not the reason he was unable to access medical services; rather, it was the reason he sought such services," so "he ha[d] not pleaded facts showing that denial of treatment was attributable to bias based on disability" (citation omitted)); *Forziano v. Indep. Grp. Home Living Program, Inc.*, 613 F. App'x 15, 18 (2d Cir. 2015) ("[T]he defendants cannot have discriminated against plaintiffs on the basis of their disability because that disability is an eligibility requirement for participation in [the alleged inadequate medical] services in the first place." (citation omitted)); *Tate v. City of New York*, No. 16-CV-1894, 2017 WL 10186809, at *5 (E.D.N.Y. Sept. 29, 2017) ("Courts in this circuit have held that not receiving proper treatment for a disability is not enough to sustain an ADA claim and that a plaintiff must allege that he was mistreated *because of* his disability." (internal quotation marks and citations omitted)).

    Here, Cooper's asthma qualified him for the medical treatment

10

program in which Cooper was allegedly prevented from participating. In other words, Cooper's asthma necessitated the medical treatment in the first place. Accordingly, logic dictates—as do the Second Circuit decisions noted above—that Cooper was not prevented from adequate medical treatment *because of* his asthma. *See Schnauder*, 679 F. App'x at 11; *Forziano*, 613 F. App'x at 18. This remains true "even assuming that plaintiff[] could show that [individual] defendants harbored some discriminatory animus against [Cooper's] disabilit[y]"—which she has not. *See Forziano*, 613 F. App'x at 18.

Accordingly, the State's motion with respect to plaintiff's claim pursuant to Title II of the ADA and Section 504 of the Rehabilitation Act is granted, and that claim for relief is dismissed.

**B.  Individual Defendants' Motion to Dismiss**

Individual defendants moved to dismiss plaintiff's claims of deliberate indifference to medical needs pursuant to 42 U.S.C. § 1983; civil rights conspiracy pursuant to 42 U.S.C. § 1985; and failure to prevent civil rights conspiracy pursuant to 42 U.S.C. § 1986. (Dkt. No. 32, Attach. 1.) In response, plaintiff withdrew her claim of failure to prevent civil rights conspiracy; conceding that it is untimely. (Dkt. No. 39 at 12.) Accordingly,

at the outset, individual defendant's motion to dismiss with respect to that claim is granted.

### 1. *Deliberate Indifference to Serious Medical Needs*

Plaintiff brings a claim for deliberate indifference to medical needs pursuant to 42 U.S.C. § 1983 against Nichols, Napper, Thompkins, Peck, and Taylor. (Am. Compl. ¶¶ 66-70.)

To establish a claim for deliberate indifference to serious medical needs, a plaintiff must show that (1) he had a serious medical condition that was (2) met with deliberate indifference by the defendants. *See Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996). Thus, deliberate indifference has two necessary components, one objective and the other subjective. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). "Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists. Subjectively, the charged official must act with a sufficiently culpable state of mind." *Id.* (internal quotation marks and citations omitted).

Individual defendants move to dismiss plaintiff's claim, arguing, among other things, that plaintiff has not adequately alleged the requisite

12

culpable state of mind. (Dkt. No. 32, Attach. 1 at 5-7.) The court disagrees.

Under the subjective element, medical mistreatment rises to the level of deliberate indifference when it "an act or a failure to act . . . that evinces a conscious disregard of a substantial risk of serious harm." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) (internal quotation marks and citation omitted). "[E]vidence that the risk was obvious or otherwise must have been known to a defendant is sufficient to [establish] that the defendant was actually aware of it." *Brock v. Wright*, 315 F.3d 158, 164 (2d Cir. 2003); *see also Baumann v. Walsh*, 36 F. Supp. 2d 508, 512 (N.D.N.Y. 1999) ("Non-medical prison personnel engage in deliberate indifference where they intentionally delayed access to medical care when the inmate was in extreme pain and has made his medical problem known to the attendant prison personnel." (internal quotation marks and citations omitted)).

Here, although the amended complaint is lacking as to specific facts with regard to the state of mind of Nichols, Napper, Thompkins, Peck, and/or Taylor, it does allege that they (1) knew Cooper had asthma and did not provide him with his "asthma pump," (2) delayed treating Cooper even

13

though they saw him struggling to breathe, and eventually saw him not breathing and without a pulse, and/or (3) performed insufficient and inadequate CPR; and that (4) Taylor delayed applying intravenous lines, knowing that Cooper was not breathing and did not have a pulse. (Am. Compl. ¶¶ 41-55.) Further, plaintiff alleges that the Commission found that individual defendants "provided improper and insufficient [CPR] and failed to provide other necessary care." (*Id.* ¶ 3.) At this juncture, these allegations—coupled with the clear seriousness of Cooper's medical condition—are sufficient to maintain a deliberate indifference claim.

Accordingly, individual defendants' motion to dismiss with respect to plaintiff's deliberate indifference claim against Nichols, Napper, Thompkins, Peck, and Taylor is denied. However, because plaintiff did not bring this claim against Gadway in her amended complaint, (Am. Compl. ¶¶ 66-70), the motion to dismiss as to Gadway is granted, and the claim against him is dismissed, with leave to amend. *See Shah v. Helen Hayes Hosp.*, 252 F. App'x 364, 366 (2d Cir. 2007) ("A party may not use his or her opposition to a dispositive motion as a means to amend the complaint." (citation omitted)). If plaintiff chooses to move to further amend her complaint, the proposed amendment shall be limited solely to the inclusion

14

of Gadway as a defendant against whom her deliberate indifference claim is brought.

2. *Civil Rights Conspiracy*

Plaintiff also brings a claim for civil rights conspiracy pursuant to 42 U.S.C. § 1985 against individual defendants.

To state a claim for civil rights conspiracy under 42 U.S.C. § 1985(3), plaintiff must allege: "1) a conspiracy; 2) for the purpose of depriving . . . any person . . . of the equal protection of the laws[;] . . . and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Britt v. Garcia*, 457 F.3d 264, 269 n.4 (2d Cir. 2006) (citations omitted). In addition, a plaintiff "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2003) (citations omitted). "Plaintiff must also allege that (1) 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action,' and (2) the conspiracy was 'aimed at interfering with rights . . . protected against private, as well as official, encroachment.'" *Smith v. Tkach*, No. 3:17-CV-

0286, 2019 WL 3975440, at *18 (N.D.N.Y. Aug. 22, 2019) (quoting *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267-68 (1993)).

Individual defendants argue that plaintiff's conspiracy claim should be dismissed because the amended complaint does not allege an agreement or meeting of the minds between individual defendants, and because it does not establish any class-based discriminatory animus against Cooper in furtherance of the alleged conspiracy. (Dkt. No. 32, Attach. 1 at 9.) Plaintiff asserts that the allegations that individual defendants were all present when Cooper was denied medical care are sufficient to maintain her claim, and that the class-based discrimination is based on Cooper's status as a disabled person. (Dkt. No. 39 at 10-11.)

The court is mindful that the amended complaint does not expressly set forth any allegations to support an agreement or meeting of the minds between individual defendants to violate Cooper's constitutional rights. (*See generally* Am. Compl.) Further, the mere allegation that individual defendants together violated his rights, or that they were all present when Cooper was denied medical care and when excessive force was used against him, is ordinarily insufficient to maintain a conspiracy claim. *See Delee v. Hannigan*, 729 F. App'x 25, 32 (2d Cir. 2018) (finding that an

16

allegation that "because the corrections officers appeared together at certain times, they had reached an agreement to deprive [the plaintiff] of constitutional rights . . . cannot reasonably lead to the inference that [the defendants] positively or tacitly came to an agreement" (internal quotation marks and citations omitted)); *Warr v. Liberatore*, 270 F. Supp. 3d 637, 650 (W.D.N.Y. 2017) ("The mere fact that the officers were all present at the time of the alleged constitutional violations is insufficient to support a conspiracy claim." (citation omitted)).

However, in light of the fact that dismissing this claim will not significantly limit the scope of discovery or change the defendants, and because the underlying constitutional violations have been sufficiently alleged and discovery could lead to proof that there was an agreement based on discriminatory animus between individual defendants to deny Cooper of his constitutional rights, the claim survives, even if only by a thread. Accordingly, individual defendants' motion to dismiss as to plaintiff's claim of civil rights conspiracy pursuant to 42 U.S.C. § 1985 is denied.

17

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the State's motion to dismiss (Dkt. No. 13) is **GRANTED IN PART** and **DENIED AS MOOT IN PART** as follows:

> **GRANTED** as to plaintiff's claim pursuant to Title II of the ADA and 504 of the Rehabilitation Act, and plaintiff's request for punitive damages as to that claim, to the extent the amended complaint can be read as making such request, which claims for relief are **DISMISSED**; and
>
> **DENIED AS MOOT** in all other respects; and it is further

**ORDERED** that the Clerk shall terminate the State of New York as a defendant; and it is further

**ORDERED** that individual defendants' motion to dismiss (Dkt. No. 32) is **GRANTED IN PART** and **DENIED IN PART** as follows:

> **GRANTED** as to plaintiff's claim of deliberate indifference pursuant to 42 U.S.C. § 1983 as against Gadway, to the extent plaintiff brings such claim against him, which claim for relief is **DISMISSED WITH LEAVE TO AMEND**; and

**GRANTED** as to plaintiff's claim of failure to prevent civil rights conspiracy pursuant to 42 U.S.C. § 1986 against individual defendants, which claim for relief is **DISMISSED**; and

**DENIED** in all other respects; and it is further

**ORDERED** that the following claims remain against Clancy, Wood, and Duffina: (1) violation of the Eighth and Fourteenth Amendments for excessive force pursuant to 42 U.S.C. § 1983 and (2) a claim for civil rights conspiracy pursuant to 42 U.S.C. § 1985; and it is further

**ORDERED** that the following claims remain against Nichols, Napper, Thompkins, Peck, and Taylor: (1) violation of the Eighth and Fourteenth Amendments for deliberate indifference pursuant to 42 U.S.C. § 1983 and (2) a claim for civil rights conspiracy pursuant to 42 U.S.C. § 1985; and it is further

**ORDERED** that the following claim remains against Gadway: a claim for civil rights conspiracy pursuant to 42 U.S.C. § 1985; and it is further

**ORDERED** that, if plaintiff wishes to further amend her complaint, she must move to do so in accordance with the Federal Rules of Civil Procedure and the Local Rules of this District within fourteen (14) days of this Memorandum-Decision and Order, and the proposed amendment shall

be limited solely to the inclusion of Gadway as a defendant against whom plaintiff's deliberate indifference claim is brought; and it is further

**ORDERED** that, if a second amended complaint is filed, individual defendants shall respond to it within the time allotted by the rules; and it is further

**ORDERED** that the parties contact Magistrate Judge Miroslav Lovric to schedule further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 9, 2020
Albany, New York

Gary L. Sharpe
U.S. District Judge