UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------- X

TRACY YVONNE COOPER, as Administrator of
the Estate of TERRY L. COOPER, JR.,

                              Plaintiff,

    -against-

Correction Officer PATRICK M. CLANCY, in his
individual capacity; Correction Officer STEVEN W.
WOOD, in his individual capacity; Correction Officer
KOLBY M. DUFFINA, in his individual capacity;
Correction Officer CHRISTOPHER J. NICHOLS, in his
individual capacity; Correction Officer NEIL J.
NAPPER, in his individual capacity; Correction Officer
CHRISTOPHER L. GADWAY, in his individual
capacity; Correction Sergeant MERIT J. PECK, in his
individual capacity; Correction Sergeant MICHAEL C.
THOMPKINS, in his individual capacity; JEFFREY H.
TAYLOR, RN, in his individual capacity,

                              Defendants.

-------------------------------------------------------------------------- X

**SECOND AMENDED
COMPLAINT**


**JURY TRIAL DEMANDED**


Case No. 9:19-cv-362 (GLS/ML)

Plaintiff TRACY YVONNE COOPER, as Administrator of the Estate of TERRY L.

COOPER, JR., by and through her attorneys, Joshua Moskovitz, Esq., and Beldock Levine &

Hoffman LLP, as and for her Amended Complaint alleges as follows:

## PRELIMINARY STATEMENT

1.      Plaintiff Tracy Cooper brings this civil rights action against the defendants for the

death of Plaintiff's son, Terry Cooper, Jr., while he was incarcerated at Clinton Correctional

Facility ("Clinton CF").  Mr. Cooper was only 25 years old and had less than four years left on his

sentence at the time of his death.  He had every reason to want to finish his prison sentence without

incident and return home to his loving family and young daughter.

2.       The Clinton County Coroner concluded that Mr. Cooper's death was caused by a cardiorespiratory arrest consistent with acute exacerbation of chronic asthma.  Mr. Cooper died after Clinton CF staff assaulted him and then failed to provide basic life-sustaining care, which would have saved Mr. Cooper's life.

3.       The New York State Commission of Correction ("the Commission") conducted a lengthy investigation of Mr. Cooper's death, including the medical care he received for his asthma before he died.  The Commission found a long history of Mr. Cooper having been denied proper care for his asthma during his incarceration.  The Commission also found that shortly before Mr. Cooper died, he collapsed while he was being moved to the infirmary after the altercation with correction officers, and that Clinton CF staff provided improper and insufficient cardiopulmonary resuscitation ("CPR") and failed to provide other necessary care.

4.       Plaintiff seeks justice for the defendants' deliberate violations of her son's civil and constitutional rights.  This lawsuit demands accountability for the defendants' senseless actions, and damages for the catastrophic injuries they caused.

## JURISDICTION AND VENUE

5.       This action is brought pursuant to 42 U.S.C. § 1983 for violations of rights secured by the Fourth and Fourteenth Amendments to the United States Constitution.

6.       This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

7.       Venue is proper pursuant to 28 U.S.C. § 1391 in the Northern District, which is the judicial district where the events giving rise to this claim took place.

## JURY DEMAND

8.       Plaintiff demands a trial by jury in this action on each of her claims for which a jury trial is legally available.

## THE PARTIES

9.      Plaintiff TRACY YVONNE COOPER is a citizen of the United States and of the State of New York.  At all times relevant to this complaint, she resided in the State of New York.

10.     Plaintiff is the Administrator of the Estate of her son, Terry L. Cooper, Jr., who died on May 19, 2016.  Plaintiff was issued Letters of Administration for Mr. Cooper's estate by the Onondaga County Surrogate's Court on July 26, 2016.

11.     Defendants PATRICK M. CLANCY, STEVEN W. WOOD, KOLBY M. DUFFINA, CHRISTOPHER J. NICHOLS, NEIL J. NAPPER, and CHRISTOPHER L. GADWAY worked at all relevant times as New York State Correction Officers at Clinton Correctional Facility ("Clinton CF").  They are sued here in their individual capacities.

12.     Defendants MERIT J. PECK and MICHAEL C. THOMPKINS worked at all relevant times as New York State Correction Sergeants at Clinton CF.  They are sued here in their individual capacities.

13.     Defendant JEFFREY H. TAYLOR, RN worked at all relevant times as a New York State Correctional Facility Nurse at Clinton CF.  He is sued here in his individual capacity.

14.     The State of New York ("the State") maintains and is responsible for the New York State Department of Correction and Community Supervision ("DOCCS").  Acting through its agency DOCCS, the State is authorized to maintain correctional facilities, and DOCCS acts as its agent and the State is ultimately responsible for DOCCS maintaining and supervising correctional facilities in the State of New York. The State assumes the risks incidental to the maintenance of correctional facilities and the employment of correctional officers and medical officials under its employ.

15.     DOCCS and the State are responsible for ensuring that people sentenced to a term of imprisonment in a State jail facility receive appropriate care and services required by law. DOCCS and the State oversee and are responsible for maintaining Clinton CF.

16.     The State maintains the New York State Commission of Correction ("the Commission").    The Commission is an oversight agency tasked with evaluating all state correctional facilities.    It evaluates compliance with all applicable laws and investigates critical incidents that occur at facilities throughout the state.

17.     The Commission includes a Medical Review Board ("the Board").    The Board is charged with the power and duty to investigate and review the cause and circumstances surrounding the death of any inmate of a correctional facility.    This requires the Board to, among other things, visit and inspect any correctional facility where an inmate has died; examine as necessary the body of the deceased to determine the cause of death; and upon review of the cause of death and circumstances surrounding the death of any inmate, to submit a report to the Commission and, where appropriate, make recommendations to prevent the recurrence of such deaths to the commission and the administrator of the appropriate correctional facility.

18.     At all relevant times, the defendants were employed by the State and/or DOCCS and acted under color of law and in the course and scope of their duties and authority as officers, agents, servants, and employees of the State and/or DOCCS.

19.     As corrections officials employed by DOCCS, the defendants were responsible for recognizing when inmates display signs of medical emergencies and for taking appropriate measures to ensure the inmates in such distress receive immediate medical attention.

20.     Upon information and belief, the defendants are citizens of the United States and citizens and residents of the State of New York.

21.     At all relevant times, the defendants violated clearly established constitutional rights, of which a reasonable officer in their position would have known.

**STATEMENT OF FACTS**

22.     Terry L. Cooper, Jr., died on May 19, 2016.

23.     He was 25 years old and had a college degree.

24.     Mr. Cooper is survived by a young daughter, his mother Tracy Cooper, his father Terry Cooper, Sr., four sisters, and an extended family who loved and cared deeply for Mr. Cooper.

25.     Mr. Cooper died in DOCCS custody while incarcerated at Clinton CF.

26.     When Mr. Cooper died, approximately four years remained on the prison sentence he was serving.

27.     Mr. Cooper was admitted to DOCCS custody on November 15, 2012 at Elmira Correctional Facility.

28.     He weighed 115 pounds and was approximately 5'5" tall.

29.     Mr. Cooper reported a medical history of asthma and it was documented on the Elmira Reception History Form that Mr. Cooper had an "asthma exacerbation and was hospitalized."

30.     Mr. Cooper's asthma is a disability as defined in the statue because it impairs his ability to breath, which is major life activity as defined by the ADA.

31.     Mr. Cooper was transferred to Clinton CF on August 27, 2015.

32.     Between then and his death on May 19, 2016, Clinton CF medical staff failed to follow the DOCCS Health Services Policy for Asthma Chronic Care for Mr. Cooper.

33.     Clinton CF medical staff failed to:

   a.   provide Mr. Cooper with a primary care encounter every six months;

b.  update Mr. Cooper's Acute Asthma Rescue Treatment Plan every six months; and

c.  schedule a medical evaluation for Mr. Cooper until May 2016, despite a referral for an asthma evaluation in September 2015.

34.  By failing to follow the proscribed guidelines for intermittent asthma and failing to provide Mr. Cooper his required primary care encounters, among other programs, DOCCS denied Mr. Cooper access to a program and discriminated against him due to his asthma.

35.  On information and belief, another inmate's medical guidelines were followed.

36.  On May 19, 2016, at approximately 7:30 p.m., in or around 3-company in B-block at Clinton CF, defendants Clancy and Wood assaulted Mr. Cooper and forced him to the ground.

37.  Defendant Duffina arrived and assisted defendants Clancy and Wood by, among other things, grabbing Mr. Cooper's legs.

38.  Upon information and belief, the conduct of defendants Clancy, Wood, and Duffina caused Mr. Cooper to suffer substantial pain.

39.  Mr. Cooper was handcuffed and escorted to the Clinton CF infirmary by defendants Nichols, Napper, and Thompkins.

40.  Mr. Cooper told defendants Nichols, Napper, and Thompkins that he could not breathe and needed his asthma pump.

41.  Upon information and belief, defendants Nichols, Napper, and Thompkins did not provide Mr. Cooper with his asthma pump.

42.  Mr. Cooper collapsed.

43.  Defendant Peck arrived and defendants Nichols, Napper, Thompkins, and Peck eventually brought Mr. Cooper into the Clinton CF infirmary.

6

44.    When Mr. Cooper was brought into the infirmary he was not breathing and did not have a pulse.

45.    Upon information and belief, defendants Nichols, Napper, Thompkins, and Peck were aware Mr. Cooper needed immediate life-saving medical care and unreasonably delayed Mr. Cooper receiving that care.

46.    Once inside the infirmary, Mr. Cooper was assessed by defendant Taylor.

47.    The defendants present – who, upon information and belief, were defendants Nichols, Napper, Thompkins, Peck, and Taylor – deliberately provided inadequate medical care to Mr. Cooper.

48.    Defendants Napper, Gadway, and Taylor performed insufficient CPR on Mr. Cooper by providing an inadequate rate of compressions.

49.    Defendants Napper, Gadway, and Taylor also failed to utilize a CPR backboard that was immediately available to them.

50.    Defendant Taylor was ordered by a physician from the Erie County Medical Center Telemed service to start two intravenous lines with saline "wide open" but defendant Taylor unreasonably delayed starting the first intravenous line for approximately fifteen minutes and delayed starting the second intravenous line for approximately forty-five minutes.

51.    Upon information and belief, in the course of an investigation into the circumstances of Mr. Cooper's death, the defendants submitted false statements and manufactured false evidence.

52.    The conduct of the defendants caused Mr. Cooper to die.

53.    As a result of his death, Mr. Cooper suffered the loss of enjoyment of life.

54.    The conduct of the defendants caused Mr. Cooper to suffer violations of his constitutional rights.

## FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 (Excessive Force)
**Against Defendants Clancy, Wood, and Duffina**

55.    Plaintiff realleges and incorporates by reference each allegation set forth in the foregoing paragraphs as if fully set forth herein.

56.    Defendants Clancy, Wood, and Duffina used excessive and unconstitutional force against Mr. Cooper and/or had the opportunity to but failed to intervene to stop the use of excessive and unconstitutional force against Mr. Cooper.

57.    The use of force against Mr. Cooper was done maliciously and sadistically and constituted cruel and unusual punishment.

58.    In committing the acts and omissions complained of herein, Defendants Clancy, Wood, and Duffina acted under color of state law to deprive Mr. Cooper of his constitutionally protected rights under the Eighth and Fourteenth Amendments to the United States Constitution.

59.    As a direct and proximate result of the deprivation of his constitutional rights, Mr. Cooper suffered the injuries and damages set forth above.

60.    The unlawful conduct of Defendants Clancy, Wood, and Duffina was willful, malicious, and oppressive and was of such a nature that punitive damages should be imposed.

## SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 (Deliberate Indifference)
**Against Defendants Nichols, Napper, Thompkins, Peck, Taylor, and Gadway**

61.    Plaintiff realleges and incorporates by reference each allegation set forth in the foregoing paragraphs as if fully set forth herein.

62.    In committing the acts and omissions complained of herein, Defendants Nichols, Napper, Thompkins, Peck, Taylor, and Gadway acted with deliberate indifference to Mr. Cooper's serious medical needs.

63.    In committing the acts and omissions complained of herein, Defendants Nichols, Napper, Thompkins, Peck, Taylor, and Gadway acted under color of state law to deprive Plaintiff of his constitutionally protected rights under the Eighth and Fourteenth Amendments to the United States Constitution.

64.    As a direct and proximate result of the deprivation of his constitutional rights, Mr. Cooper suffered the injuries and damages set forth above.

65.    The unlawful conduct of Defendants Nichols, Napper, Thompkins, Peck, Taylor, and Gadway was willful, malicious, oppressive, and/or reckless, and was of such a nature that punitive damages should be imposed.

## THIRD CAUSE OF ACTION
### 42 U.S.C. § 1985 (Civil Rights Conspiracy)
### Against All Defendants

66.    Plaintiff realleges and incorporates by reference each allegation set forth in the foregoing paragraphs as if fully set forth herein.

67.    Upon information and belief, the defendants agreed among themselves and with other individuals to act in concert to deprive Mr. Cooper of his clearly established rights, including but not limited to his right to be free from cruel and unusual punishment and to receive necessary care for a serious medical need.

68.    In furtherance of the conspiracy, the defendants engaged in and facilitated numerous overt acts, including, without limitation, assaulting Mr. Cooper, denying him necessary medical care, and upon information and belief, submitting false statements and manufacturing

false evidence to hide their malfeasance.

69.     As a direct and proximate result of the deprivation of his constitutional rights,

Mr. Cooper suffered the injuries and damages set forth above.

70.     The defendants are therefore liable for Mr. Cooper's injuries and death under 42

U.S.C. § 1985.

71.     The defendants' actions were willful, malicious, oppressive, and/or reckless, and

were of such a nature that punitive damages should be imposed.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff demands the following relief against Defendants, jointly and severally:

(a)     compensatory damages in an amount just and reasonable and in conformity with the evidence at trial;

(b)     punitive damages to the extent allowable by law;

(c)     attorney's fees;

(d)     the costs and disbursements of this action;

(e)     interest; and

(f)     such other and further relief as this Court deems just and proper.

Dated: New York, New York
       June 15, 2020

                                    THE LAW OFFICE OF JOSHUA MOSKOVITZ
                                    233 Broadway, Suite 2220
                                    New York, New York 10279
                                    (212) 380-7040
                                    josh@moskovitzlaw.com


                                    By: _____
                                        Joshua S. Moskovitz


                                    BELDOCK LEVINE & HOFFMAN LLP
                                    99 Park Avenue, 26th Floor/PH Suite
                                    New York, New York 10016
                                    (212) 490-0400
                                    Jonathan C. Moore
                                    David Rankin


                                    By: /s/ _____
                                        Jonathan C. Moore

                                    *Attorneys for Plaintiff*

11