**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TRACY YVONNE COOPER,**

                    **Plaintiff,**

        **v.**

**CORRECTION OFFICER**
**PATRICK M. CLANCY et al.,**

                 **Defendants.**
_____

**9:19-cv-362**
**(GLS/ML)**

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Beldock, Levine & Hoffman | JONATHAN C. MOORE, ESQ. |
| 99 Park Avenue, 26th Floor | DAVID B. RANKIN, ESQ. |
| New York, NY 10016 | REGINA POWERS, ESQ. |
| | |
| Hamilton Clarke, LLP | JOSHUA S. MOSKOVITZ, ESQ. |
| 48 Wall Street | |
| Suite 1100 | |
| New York, NY 10005 | |
| | |
| **FOR THE DEFENDANTS:** | |
| HON. LETITIA JAMES | JORGE A. RODRIGUEZ |
| New York State Attorney General | Assistant Attorney General |
| The Capitol | |
| Albany, NY 12224 | |

**Gary L. Sharpe**
**Senior District Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

Plaintiff Tracy Yvonne Cooper (hereinafter "Cooper"), as Administrator of the Estate of Terry L. Cooper, Jr. (hereinafter "Terry"), brings this action against defendants Correction Officer Patrick M. Clancy, Correction Officer Steven W. Wood, Correction Officer Kolby M. Duffina, Correction Officer Christopher J. Nichols, Correction Officer Neil J. Napper, Correction Officer Christopher L. Gadway, Correction Sergeant Merit J. Peck, Correction Sergeant Michael C. Thompkins, and Jeffrey H. Taylor, alleging Eighth Amendment excessive force, failure to intervene, and deliberate indifference claims pursuant to 42 U.S.C. § 1983, and a 42 U.S.C. § 1985 civil rights conspiracy claim.  (2d Am. Compl., Dkt. No. 52.) Now pending is defendants' motion for summary judgment, (Dkt. No. 127), and Cooper's motion seeking permission to file a sur-reply, (Dkt. No. 140). For the reasons that follow, defendants' motion is granted in part and denied in part, and Cooper's motion is granted.[1]

---

[1]  Cooper "request[s] that the [c]ourt accept [her motion] as a sur-reply to [d]efendants' motion for summary judgment," necessitated by the fact that "arguments [that d]efendants made in their reply brief [were] based on [an] exhibit . . . [that was] not part of [d]efendants' initial moving

## II. __Background__[2]

At all relevant times, Terry was incarcerated at Clinton Correctional Facility (CCF) in Dannamora, New York.  (Defs.' Statement of Material Facts (SMF) ¶ 1, Dkt. No. 127, Attach. 11.)  Clancy, Duffina, Wood, Nichols, Napper, Gadway, Peck, and Tompkins were all corrections officers at CCF.  (*Id.* ¶¶ 3-10.)  Taylor was a registered nurse at CCF.  (*Id.* ¶ 11.)  Cooper is the mother of Terry and the administrator of his estate. (*Id.* ¶ 2.)

On May 19, 2016, Terry activated a metal detector while passing through a gate at CCF.  (*Id.* ¶ 15.)  Clancy and Duffina, who were stationed at the gate, searched Terry and his effects, and then escorted him back to his cell, located in CCF's "B Block."  (*Id.* ¶¶ 16, 22.)  When they arrived at the B Block, Wood, who was stationed there, accompanied the escort of Terry towards to his cell.  (*Id.* ¶¶ 26-27.)  Duffina, Clancy, and Wood then "walked up to the landing on the third floor" of the B Block and stopped at a security gate there.  (*Id.* ¶ 28.)  At that time, Clancy asked Terry to produce

---

papers."  (Dkt. No. 140.)  The motion is granted, and the court accepts the motion as Cooper's sur-reply.

[2] Unless noted otherwise, the facts are undisputed.

his identification documentation.  (*Id.* ¶ 29.)[3]  Defendants assert that,

following the request that Terry produce his identification documentation,

Terry reached into his pocket, as if to comply with Clancy's request, but

then removed his closed fist and struck both Clancy and Wood in the face.

(*Id.* ¶¶ 30-32.)  Cooper maintains that Terry did not strike any of the

officers.  (Pl.'s SMF ¶¶ 30-32, 167, Dkt. No. 133.)  In an attempt to restrain

Terry, Clancy "bear hug[ged]" Terry from behind, Wood grabbed Terry's

arm, and they both "brought [Terry] to the ground."  (Defs.' ¶¶ 34-35.[4])

Once Terry was brought to the ground, he "continued to resist . . . and

prevent[ed] the officers from placing his hands in mechanical restraints."

(*Id.* ¶ 36.)[5]  Duffina then grabbed Terry's legs, but Terry continued to resist.

---

[3]  Although Cooper disputes a portion of the facts in this paragraph of defendants' statement of material facts, the facts cited here are not disputed.

[4]  Cooper "disputes" the facts asserted in these paragraphs of defendants' statement of material fact, but fails to cite to support in the record that shows an actual dispute; accordingly, the facts are deemed admitted pursuant to Local Rule 56.1(b).  The same is true for paragraphs 37, 39, and 43 of defendants' statement of material facts.

[5]  Cooper "disputes" the facts asserted in paragraph 36 of defendants' statement of material fact, but cites only to a physician's report noting that "the available autopsy photographs of Terry's right hand . . . showed no visible contusion and [a right hand contusion was] neither observed nor documented . . . during [his] autopsy," (Dkt. No. 134, Attach.

(*Id.* ¶ 37.)  "Clancy [then] applied approximately two closed-fisted strikes with his right hand to the right side of [Terry's] upper torso, in order to gain compliance."  (*Id.* ¶ 39.)  Eventually, Wood and Clancy secured both of Terry's arms and placed them in mechanical restraints, and, at that time, Terry stopped resisting.  (*Id.* ¶¶ 40-41, 43.)  Ultimately, defendants assert that the use of force incident lasted approximately one minute, "[a]part from the [two closed-fist] strikes to the side of [Terry]'s upper torso and the grabs and holds used to bring him to the ground and restrain him, no other force was used," and the aforementioned use of force resulted in "no visible injuries" to Terry.  (*Id.* ¶¶ 47-48, 50.)

However, Cooper asserts that the officers used their batons to strike Terry while he pleaded for them to stop for approximately three to five minutes.  (Pl.'s SMF ¶¶ 48, 50, 152-54.)  Additionally, Cooper contends that Terry's injuries were extensive and, ultimately, fatal.  (*Id.* ¶¶ 47, 157, 160-63, 169.)

The parties do not dispute that "[s]hortly after the use-of-force incident, [Terry] was turned over to . . . Napper and Nichols," who were

_____

4 ¶ 7), which does not controvert what is asserted by defendants, and, accordingly, the facts are deemed admitted.

instructed to bring Terry to the medical building, that Peck arrived and joined the escort of Terry in B Block, as it began, and then, at a later point during the escort, Tompkins joined Napper, Nichols, and Peck. (Defs.' SMF ¶¶ 64-65, 70,[6] 72-73, 78.) However, the parties disagree regarding Terry's method of transport to the medical building. Defendants maintain that Terry "was walking under his [own] power" when the escort began, but, as it progressed, Terry began breathing heavily, and, just before reaching the medical building, began expressing that he could not breathe and that he needed his "asthma pump." (Id. ¶¶ 68, 74, 79 (quotation marks omitted).) "Shortly thereafter, [Terry] fell to his knees" and "[w]ithin seconds" of his collapse, Nichols, Napper, Thompson, and Peck all picked Terry up and carried him the rest of the way to the infirmary. (Id. ¶¶ 80, 85.) Cooper contends that, approximately fifteen to twenty-five minutes after the use of force incident that rendered Terry unconscious, his "lifeless body" was dragged down the stairs and out of the B Block. (Pl.'s SMF ¶¶ 67-68, 70, 74, 79-81, 85, 154-56.)

---

[6] Although Cooper disputes a portion of the facts in this paragraph of defendants' statement of material facts, the facts recited here, namely, the timing of Peck's joining the escort, are not disputed.

Once in the infirmary, the treatment Terry received is largely

undisputed.  Upon arrival, "Taylor conducted an assessment of [Terry] and

found him to be apneic, non-responsive[,] and pulseless."  (Defs.' SMF

¶ 93.)  Then, defendants contend, Taylor "directed the medical staff to

contact Telemed and emergency medical services, and to start

cardiopulmonary resuscitation."  (*Id.* ¶ 95.)  Cooper asserts that Taylor did

not instruct "medical staff" to perform CPR on Terry, rather Taylor

instructed Gadway, another correctional officer who had reported to the

medical building, to perform CPR.  (Pl.'s SMF ¶ 95; Defs.' SMF ¶ 99.)

Tayor then placed an automated external defibrillator (AED) on Terry.

(Defs.' ¶ 97.)  Thereafter, "Napper and Gadway assisted with CPR efforts

by providing chest compressions, while [a n]urse . . . assisted . . . to

provide respiration."  (*Id.* ¶ 100.)  Once in contact with Telemed, Taylor

informed the Telemed physician of Terry's condition, and the Telemed

physician directed Taylor to administer two IV lines of saline and a dose of

Narcan to Terry.  (*Id.* ¶¶ 104-05.)  Defendants contend that Taylor

complied with the Telemed doctor's instruction, (*id.* ¶ 106), while Cooper

asserts that Taylor delayed sometime before inserting the first and second

saline lines,[7] and before administering Narcan, (Pl.'s SMF ¶¶ 106, 177,

181).  Shortly thereafter, emergency medical services personnel from

Champlain Valley Physician's Hospital (CVPH) arrived at the infirmary, and

Taylor "ceded primary care" to them, but remained in the infirmary to

provide assistance.  (Defs.' SMF ¶¶ 108, 110, 111.)  Terry never regained

a pulse or began breathing, and was ultimately declared deceased.  (*Id.*

¶¶ 115-16.)  Additionally, Cooper maintains that Taylor, Napper, and

Gadway provided an insufficient rate of compressions during their CPR

administration and "failure[d] to utilize the CPR backboard that was

immediately available [to] them."  (Pl.'s SMF ¶¶ 176, 181.)

### III.  <u>Standard of Review</u>

The standard of review under Fed. R. Civ. P. 56 is well settled and

will not be repeated here.  For a full discussion of the governing standard,

the court refers the parties to its prior decision in *Wagner v. Swarts*, 827 F.

Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489

---

[7]  Cooper posits inconsistent evidence with respect to the length of the alleged delay in Taylor's administering of the saline lines.  (*Compare* Pl.'s SMF ¶¶ 106, 177 (asserting an eight and twenty minute delay, respectively), *with id.* ¶ 181 (asserting a fifteen and forty-five minute delay, respectively).)

F. App'x 500 (2d Cir. 2012).

## IV. <u>Discussion</u>

### A. <u>Excessive Force</u>

Cooper brings an excessive force claim against Clancy, Duffina, and

Wood.  (2d Am. Compl. ¶¶ 55-60.)  Defendants argue that they are entitled

to summary judgment on that claim because their actions were not

objectively excessive in light of the circumstances, given that Terry "was

the initial aggressor" and Clancy, Duffina, and Wood's "measured

response was aimed only at stopping [Terry's] attack and subduing" him.

(Dkt. No. 127, Attach. 12 at 14.)  Additionally, defendants assert that

Clancy, Duffina, and Wood did not "possess[] the necessary culpable state

of mind." (*Id.* at 15.)  Cooper maintains that "there is ample evidence" that

Duffina, Clancy and Wood used excessive force, including witness

testimony and Terry's autopsy report.  (Dkt. No. 132 at 9-10.)

The Eighth Amendment prohibits "cruel and unusual punishments."

U.S. Const. amend. VIII.  "Although not every malevolent touch by a prison

guard gives rise to a federal cause of action, inmates have the right to be

free from the unnecessary and wanton infliction of pain at the hands of

prison officials." *Randolph v. Griffin*, 816 F. App'x 520, 522 (2d Cir. 2020)

9

(internal quotation marks and citations omitted).

Eighth Amendment excessive force claims have both an objective and subjective component.  *See id.* at 523*; see also Harris v. Miller*, 818 F.3d 49, 63-65 (2d Cir. 2016).  With respect to the subjective component, a plaintiff must show "that the defendant acted with a subjectively sufficiently culpable state of mind."  *Harris*, 818 F.3d at 63 (internal quotation marks and citation omitted).  In making such a determination a court will consider: (1) "the extent of the injury and the mental state of the defendant"; (2) "the need for the application of force;" (3) "the correlation between that need and the amount of force used;" (4) "the threat reasonably perceived by the defendant[]; and" (5) "any efforts made by the defendant[] to temper the severity of a forceful response."  *Bradshaw v. City of New York*, 855 F. App'x 6, 9 (2d Cir. 2021) (citation omitted).

Regarding the objective component, the conduct must be "objectively harmful enough or sufficiently serious to reach constitutional dimensions."  *Harris*, 818 F.3d at 64 (internal quotation marks and citation omitted).  "The objective component of the Eighth Amendment test is . . . context specific, turning upon contemporary standards of decency."  *Id*. (internal quotation marks and citation omitted).  However, "malicious use of force to cause

10

harm, constitute[s an] Eighth Amendment violation[] *per se* . . . . [B]ecause when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated." *Id.* (citations omitted).

Here, there are disputes regarding the extent of the force used against Terry, the duration for which the force was applied, and the necessity of the degree of force used, which preclude summary judgment. On one hand, defendants argue that their use of force was minimal, including two closed-fists strikes to the side of Terry's upper torso, and "body holds and restraints," which were utilized only after Terry attacked them and resisted their attempts to restrain him, pointing to the declarations of Clancy, Duffina, and Wood.  (Dkt. No. 127, Attach. 12 at 14-15; *see id.*, Attach. 2 ¶¶ 34-42, 70-71*; id.*, Attach 3 ¶¶ 27-34, 41-42*; id.*, Attach. 10 at 18-26, 29-32, 51.)  On the other hand, Cooper adduces testimony from a witness stating that Terry was beaten by officers for three to five minutes while pleading for the officers to stop, that the officers' batons were used, and that Terry was subsequently dragged down the stairs while his feet and head were "dangling" and he was bleeding from

his head, (Dkt. No. 134, Attach. 6 at 109, 141, 190).[8]  Additionally, Cooper

points to forensic evidence demonstrating more extensive injuries suffered

by Terry than that which would be consistent with the amount of force

defendants argue was used.  (Dkt. No. 134, Attach. 4 ¶ 6; *id.*, Attach. 20 at

43, 71-72, 75-76.)  Accordingly, there is a factual dispute necessitating a

trial, and, for that reason, defendants' motion must be denied with respect

to Cooper's excessive force claim.

## B.   Failure to Intervene

Cooper alleges a failure to intervene claim against Clancy, Duffina,

and Wood.  (2d Am. Compl. ¶ 56.)  Defendants argue that, because "[t]he

facts clearly show that [Terry] was the aggressor, and [d]efendants acted

with the intent to prevent further injury to the persons involved and to

restrain [Terry] from continuing to assault staff," that "there is no admissible

---

[8]  Defendants attempt to discredit this testimony, in part, by using
call logs from CCF to attempt to call into question the witness's timeline of
events.  (Dkt. No. 139, Attach. 18 at 4-5).  The court will not engage in a
credibility determination.  *See Knox v. County of Putnam*, No. 10 Civ.
1671, 2012 WL 446201, at *5 (S.D.N.Y. Sept. 27, 2012) ("It is well-settled
that a district court may not make credibility determinations on a motion
for summary judgment.") (citation omitted); *see also Manganiello v. City of
New York*, 612 F.3d 149, 161 (2d Cir.2010) ("Credibility determinations,
the weighing of the evidence, and the drawing of legitimate inferences
from the facts are jury functions, not those of a judge.").

factual proof suggesting that during the use-of-force incident . . . Clancy, Wood or Duffina had reason or opportunity to intervene to protect" Terry. (Dkt. No. 127, Attach. 12 at 16.)  Cooper counters that, "because there is substantial evidence that the use-of-force [against Terry] was unjustified" it cannot be said that "there was no need to intervene to stop it."  (Dkt. No. 132 at 12.)

To be found liable for failing to intervene, an officer "must have . . . failed to intervene, despite having a realistic opportunity to do so, to prevent another officer from applying excessive force."  *McGrier v. City of New York*, 849 F. App'x 268, 272 (2d Cir. 2021) (internal quotation marks and citation omitted).  Because of the above-noted factual disputes as to the force used against Terry, *see supra* Part IV.A., defendants' motion is denied with respect to Cooper's failure to intervene claim.

**C.   Deliberate Indifference**

Cooper alleges deliberate indifference to serious medical needs, in violation of the Eighth Amendment against Nichols, Napper, Thompkins, Peck, Taylor, and Gadway.  (2d Am. Compl. ¶¶ 61-65.)  Defendants argue that they are entitled to summary judgment because the actions taken by Nichols, Napper, Tompkins and Peck while escorting Terry to the medical

building do not evince deliberate indifference.  (Dkt. No. 127, Attach. 12 at 19-20.)  Specifically, Nichols, Napper, Tompkins and Peck assert that none of them saw visible injuries on Terry or found him to be in distress, and, after Terry collapsed, they immediately carried him to the infirmary to receive medical treatment.  (*Id.*)  Additionally, defendants contend that Cooper "fails to establish a cause of action for deliberate indifference with regard to the treatment [Terry] received . . . in the infirmary."  (*Id.* at 20.)  Specifically, defendants maintain that Taylor assessed Terry "immediately [and then] acted to provide [him] with emergency medical treatment," including CPR and an AED device, with the assistance of Gadway, Napper, and a Telemed physician until CVPH EMTs arrived and "took over the [primary] medical care of" Terry with defendants remaining to assist. (*Id.* at 20-21.)  Cooper argues that Terry did not receive prompt CPR, and when he did receive CPR it was of "poor quality"— despite defendants being trained in the proper technique—due to "an inadequate rate of compressions . . . [,] failure to utilize the [available] CPR backboard," and Taylor's poor instruction.  (Dkt. No. 132 at 15-17.)  Additionally, Cooper maintains that Taylor delayed eight and twenty minutes, respectively, in inserting two saline solution IV lines.  (*Id.* at 18.) Further, Cooper asserts

14

that, after the use of force incident, "fifteen minutes or more passed before the officers took [Terry] to the infirmary."  (*Id.* at 17.)

"[T]o establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted).  "A deliberate indifference claim contains two requirements."  *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013).  "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious."  *Id.* (internal quotation marks and citations omitted). The alleged deprivation is sufficiently serious when "a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (internal quotation marks and citations omitted).  Subjectively, the charged official must act with a sufficiently culpable state of mind, requiring at least "reckless in their denial of medical care."  *See Spavone*, 719 F.3d at 138 (citation omitted). This means "that the charged official [must] act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006); *see Dukes v.*

15

*Deputy Supt. of Sec.*, 153 F. App'x 772, 773 (2d Cir. 2005) (noting that a claim of "deliberate indifference to a serious medical . . . requires more than negligence").

Here, Cooper has satisfied the objective prong of his deliberate indifference claim.  *See Hathaway*, 99 F.3d 550, 553 (2d Cir. 1996) (noting that objective prong of a deliberate indifference claim is met where "a condition of urgency, one that may produce death, degeneration, or extreme pain exists" (internal quotation marks and citation omitted)). However, regarding the treatment provided to Terry at the infirmary, Cooper has failed to meet the subjective prong, and, thus, summary judgment is granted in favor of defendants.  Cooper points to instances of allegedly inadequate care provided to Terry in the infirmary, including an inadequate rate of CPR chest compressions, the failure to use a CPR back board, and minutes-long delays in administering two IV lines to Terry, (Dkt. No. 123 at 16-20), however, assuming this conduct constitutes some degree of malpractice, incompetence, or misjudgment, it does not amount to deliberate indifference.  Cooper's argument that Taylor, Napper and Gadway did not properly provide CPR or competently insert an IV, (*id.*), would constitute, at the most, negligence, *see Burgess v. County of*

*Rensselaer*, No. 1:03-CV-00652, 2006 WL 3729750, at *8 (N.D.N.Y. Dec. 18, 2006) ("[A] claim of misdiagnosis, faulty judgment, or malpractice without more to indicate deliberate indifference, is not cognizable under [S]ection 1983."); *see also Warren v. N.Y.C. Dep't of Corr. Med. Staff*, No. 17-CV-1125, 2021 WL 1163105, at *9 (E.D.N.Y. Mar. 26, 2021) ("[I]t is well-established that 'mere medical malpractice is not tantamount to deliberate indifference.'" (quoting *Charles v. Orange County*, 925 F.3d 73, 87 (2d Cir. 2019))).

However, regarding defendants' argument that Taylor, Gadway, Napper, Nichols, Thompkins, and Peck "unreasonably withh[e]ld[] necessary medical care" by delaying "fifteen minutes or more . . . before" taking Terry to the infirmary after the use of force incident, (Dkt. No. 131 at 17), there is a factual dispute such to preclude summary judgment with respect to Napper and Nichols.  Defendants contend that, "[w]ithin seconds" of Terry collapsing, they carried him to the infirmary.  (Defs.' SMF ¶¶, 79-80, 85.)  However, Cooper asserts that there was an approximately fifteen- to twenty-five-minute delay after the use of force incident, which rendered Terry unconscious, until his "lifeless body" was dragged down the stairs and out of B Block.  (Pl.'s SMF ¶ 156.)  Such a factual dispute

17

precludes summary judgment.  *See Bozeman v. Orum*, 422 F.3d 1265,

1273 (11th Cir. 2005) (concluding, under the substantially similar

Fourteenth Amendment deliberate indifference standard, "that the

[o]fficers, who knew [the prisoner] was unconscious and not breathing and

who then failed for fourteen minutes to check [his] condition, call for

medical assistance, administer CPR or do anything else to help,

disregarded the risk facing [him] in a way that exceeded gross

negligence"), *abrogated on other grounds by Kingsley v. Hendrickson*, 576

U.S. 389 (2015); *see also Isaac v. City of New York*, No. 17 Civ. 1021,

2018 WL 1322196, *3 (S.D.N.Y. Mar. 13, 2018) ("A claim of an

unconstitutional delay . . . is . . .  cognizable if it reflects deliberate

indifference to . . . a life-threatening or fast-degenerating condition."

(internal quotation marks and citation omitted).  Regarding the alleged

delay with which Terry's transport to the infirmary began, the undisputed

facts demonstrate that neither Taylor, Gadway, Tompkins, nor Peck

contributed to it, (Defs.' SMF ¶¶ 70,[9] 72, 91, 99 (establishing that Peck and

---

[9] As previously mentioned, *see supra* note 5, Cooper disputes a portion of the facts in this paragraph of defendants' statement of material facts but the facts recited here—the timing of Peck's joining the escort—are not in dispute.

Tompkins did not become involved in the post-use of force transportation of Terry until Napper and Nichols began the transport of Terry down B Block staircase, and Taylor and Gadway only became involved at the infirmary).  Accordingly, defendants' motion for summary judgment is granted as to Taylor, Gadway, Napper, Nichols, Tompkins, and Peck with respect Cooper's deliberate indifference claim insofar as it is premised on the care Terry received in the infirmary, and as to Taylor, Gadway, Tompkins, and Peck with respect to alleged delay in beginning Terry's transport to the infirmary.  Defendants' motion is denied with respect to Nichols and Napper regarding the alleged delay in beginning Terry's transport to the infirmary.

**D.   Conspiracy**

Cooper alleges a conspiracy to violate Terry's civil rights against all defendants.  (2d Am. Compl. ¶¶ 66-71.)  Defendants argue that Cooper "cannot produce any admissible evidence tending to show that [they] engaged in any conspiracy to deprive [Terry] of his civil rights" as "the record does not reflect any instances of communication or coordination by [d]efendants to either deprive [Terry] of his rights or to cover up any wrongful conduct."  (Dkt. No. 127, Attach. 12 at 22.)  Cooper asserts that

defendants are misrepresenting the extent of the force used against Terry, "fabricated reports to cover up their actions," that Wood was seen poking Terry with a baton and cursing at him before the use of force incident and has been described as "racist" who "mistreat[s] black people," and, finally, that "fifteen minutes passed after the assault before [Terry] was removed from the housing block," indicating that "Napper, Nichols, Tompkins, and Peck . . . conspired with Clancy, Duffina, and Wood to (a) cover-up the excessive force, and (b) deny [Terry]'s Eighth Amendment right to adequate medical care."  (Dkt. No. 132 at 23-25.)

42 U.S.C. § 1985(3) provides, in pertinent part:

> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

To support a claim pursuant to Section 1985(3), a plaintiff must allege:

> 1) a conspiracy; 2) for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and 3) an act in furtherance of the conspiracy; 4) whereby a person is either injured . . .

or deprived of any right or privilege of a citizen of the
United States.

*Oliver v. N.Y. State Police*, No. 1:19-cv-233, 2020 WL 1849484, at *9

(N.D.N.Y. Apr. 13, 2020) (quoting *Dolan v. Connolly*, 794 F.3d 290, 296

(2d Cir. 2015)).  "The conspiracy must also be motivated by some racial or

perhaps otherwise class-based, invidious discriminatory animus." *Dolan*,

794 F.3d at 296 (internal quotation marks and citation omitted).

As a preliminary matter, in responding to defendants' motion, Cooper

does not provide any examples of Taylor's participation in the alleged

conspiracy, and, thus, summary judgment is granted as to Taylor for lack

of personal involvement.  With respect to the others, there are facts from

which a jury could infer that the remaining defendants entered into an

agreement to violate Terry's rights.  Specifically, Cooper argues that

defendants engaged in various acts that allegedly violated Terry's civil

rights or covered up such a violation, including that defendants are

misrepresenting the extent of the force used against Terry, they "fabricated

reports to cover up their actions" and delayed in providing medical support

to Terry, "Wood was poking [Terry] with a baton and cursing at him as" he

was brought into the housing block, and some defendants "prepared their

paperwork together" or discussed the use of force incident among themselves or with other non-defendant officers and union representatives. (Dkt. No. 132 at 23-25.)[10]  Accordingly, summary judgment is denied as to all defendants except Taylor.

## V.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Cooper's letter motion requesting that the court accept her submission as a sur-reply (Dkt. No. 140) is **GRANTED**; and it is further

**ORDERED** that defendants' motion for summary judgment (Dkt. No. 127) is **GRANTED IN PART and DENIED IN PART** as follows:

> **GRANTED** as to (1) Cooper's conspiracy claim against Taylor;
>
> (2) deliberate indifference claim insofar as it is premised on the
>
> care Terry received in the infirmary; and (3) deliberate

---

[10]  Regarding defendants' qualified immunity argument, that defense is unavailable at this juncture in light of the factual disputes highlighted above.  *See Hemphill v. Schott*, 141 F.3d 412, 418 (2d Cir. 1998) (noting that a qualified immunity defense at the summary judgment stage requires that no dispute about material factual issues that inform that defense remain); *see also Parker v. Donnelly*, No. 9:21-CV-130, 2022 WL 7290103, at *12 (N.D.N.Y. July 15, 2022).

indifference claim insofar as it is premised on the alleged delay of Terry's transport to the infirmary after the use of force incident against Taylor, Gadway, Tompkins, and Peck, and **DENIED** in all other respects; and it is further

**ORDERED** that Taylor is **DISMISSED** from the action; and it is further

**ORDERED** that the claims remaining for trial are: (1) Cooper's excessive force claim against Clancy, Wood, and Duffina, (2) failure to intervene claim against Clancy, Wood, and Duffina, (3) deliberate indifference claim insofar as it is premised on the alleged delay of Terry's transport to the infirmary after the use of force incident against Nichols and Napper, and (4) conspiracy claim against Clancy, Wood, Duffina, Nichols, Napper, Gadway, Peck, and Thompkins; and it is further

**ORDERED** that the case is now deemed trial ready and a trial order will be issued in due course; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

23

March 24, 2023
Albany, New York

Gary L. Sharpe
U.S. District Judge